IN UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MEGAN DIGGS individually and on behalf of all others similarly situated<br><br>     Plaintiff,<br>v.<br><br>INTERNATIONAL FOLLIES, INC. d/b/a THE CHEETAH LOUNGE/ ALLUVIA RESTAURANT and JACK BRAGLIA<br><br><br>     Defendants. | Civil Action No.:<br><br>FLSA ACTION<br><u>Jury Trial Demanded</u> |

## **PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT**

COMES NOW Plaintiff Megan Diggs (hereinafter "Named Plaintiff") individually and on behalf of all others similarly situated ("Plaintiffs"), by and through their undersigned attorneys, and brings this collective action against International Follies Inc d/b/a The Cheetah Lounge/Alluvia Restaurant and Jack Braglia (collectively "Defendants"), they do hereby state and allege as follows:

1. The case implicates Defendants' violations of the Fair Labor Standards Act's ("FLSA") tip credit violations and subsequent underpayment of its employees at the federally mandated minimum wage rate. Defendant's failed to pay Plaintiff and all similarly situated workers their earned minimum wages. Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b).

## SUMMARY OF ACTION

2.  Defendants pay their tipped employees below the minimum wage rate by negatively taking advantage of the tip-credit provisions of the FLSA. Under the tip-credit provision, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3.  However, there are strict requirements for an employer to utilize the "tip credit." See 29 U.S.C. 203(m). An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice. Plaintiff and similarly situated opt-in employees did not receive said notice.

4.  Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff.

5.  Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA). *See* 29 U.S.C. 203(m).

6.  Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped

occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC,* 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc*., No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7. Finally, an employer cannot require its tipped employees to perform non tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc*., 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois*, LLC, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois*, LLC, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in §

30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

    8. Defendants violated the FLSA in the following respects:

    a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet their minimum wage obligations. In fact, Defendant failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

    b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendant, which reduced her wages below the minimum hourly wage required for tipped employees.

    c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work,

including, but not limited to, attending mandatory pre-shift meetings, administering various mandatory tip payouts, taking mandatory breathalyzer tests, placing chairs on tables and sweeping the floors. The mandatory meetings typically lasted at least 20-30 minutes before each shift. Plaintiffs' administration of these various mandatory tip payouts added at least 30 to 40 minutes to their non-tip generating work each night. The mandatory "check-out" procedures added at least 30 minutes to their non-tip generating work, in addition to another 20-30 minutes to take a mandatory breathalyzer test.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week:** Plaintiff was required to perform greater than 20% of her time in performing non-tip producing side work, including, but not limited to, cleaning tables, changing the table linen, bringing out silverware and plates to the front, setting up Executive rooms, setting up VIP rooms making coffee and cappuccinos, filling up sanitizer bottles, restocking condiment caddies and laying out ashtrays.

e. **Violation for unpaid training:** Plaintiffs were also required to attend mandatory training that they were not paid to attend, and which constituted additional non-tip generating work.

f. **Violations of the TIPA provisions against illegal tip pooling**: Defendants required Plaintiffs to share their tips with Defendants in violation of the tip credit provisions of the FLSA. Under TIPA:[a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit. 29 U.S.C. § 203. Defendants required Plaintiffs to share their tips with managers and security personnel, and kept a portion of tips paid to Plaintiffs by Defendants' customers.

9. As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendants must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

**SUBJECT MATTER JURISDICTION AND VENUE**

10. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), et. seq.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged. In particular, Plaintiff worked for Defendant in this District and was denied the wages he is owed in this District. Thus, Plaintiff was harmed in this District.

**PARTIES AND PERSONAL JURISDICTION**

12. The Collective Members are all current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this action to the present.

13. Defendant International Follies, Inc. is a Georgia for profit Corporation with its principal place of business located at 887 Spring Street NW, Atlanta, GA, 30308. On information and belief Defendant International Follies, Inc. is the legal owners of The Cheetah club. Defendants may be served with a copy of the summons and complaint by leaving a copy with its registered agent for service Mr. Gary Freed, 101 Marietta Street, NW, Suite 3600, Atlanta, GA, 30303.

14. Defendant Jack Braglia ("Braglia") is a natural person, General Manager and part owner of the Cheetah and a resident of Fulton County, Georgia. Braglia exercised control over Cheetah's business operations. Braglia acted directly or indirectly on behalf of Cheetah, and, at all times mentioned herein, was an "employer" or joint employer of Plaintiffs within the meaning of

the FLSA. Defendant Braglia may be served at 887 Spring Street, NW, Atlanta, Fulton County, Georgia 30308.

15. Personal jurisdiction exists over Defendant because it has sufficient minimum contacts with the State of Georgia to confer personal jurisdiction. Defendant conducts business throughout Georgia. Furthermore, Defendant contracted with and employs Georgia residents, has Georgia customers, markets to residents of Georgia, and owns property in Georgia. Moreover, the violation of the law and the harm committed to Plaintiff occurred in Georgia.

## COVERAGE

16. At all material times, Defendant has been an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

17. At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

18. At all material times, Defendant has enjoyed yearly gross revenue in excess of $500,000.

19. At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

## FACTS

20. Defendants operate an adult entertainment club and restaurant in Atlanta, Georgia (Fulton County) commonly known as "The Cheetah Lounge/ /Alluvia Restaurant."

21. Defendants are, or were, full-service restaurants that employ waitresses to provide services to customers.

22. A waitress gathers orders from customers and delivers food and beverages to the customers. A waitress is paid an hourly wage by Defendant and receives tips from customers.

23. However, Defendant paid its tipped workers less than the minimum wage under the law.

24. Defendant attempted to utilize the tip credit to meet its minimum wage obligation to its tipped workers, including the Plaintiff and Collective Members.

25. Plaintiff worked as a waitress and was paid less than the federal minimum wage. She worked for Defendants from approximately September 2018 to March 2020.

26. The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit. (See https://adasina.com/investorstatement-in-support-of-ending-the-subminimum-wage/, last visited January 11, 2021). The letter states as follows: Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people. Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor. (Id.) (emphasis in original)

27. Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

28. In this case, Defendant did not satisfy the strict requirements to use the tip credit. Defendant maintained a policy and practice whereby it failed to provide the Plaintiff and the Collective Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

29. Defendant also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Collective Members were engaged in dual occupations while being compensated at the tip credit rate. While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

30. Defendant also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation. These duties include but are not limited to the following: cleaning tables, changing the table linen, bringing out silverware and plates to the front, setting up Executive rooms, setting up VIP rooms, making coffee and cappuccinos, filling up sanitizer bottles, restocking condiment caddies and laying out ashtrays, amongst other activities, that were not related to tipped duties. In fact, Plaintiff had to place chairs on tables, sweep floors, work as a cashier, seat customers and various other perform host duties – duties of which are normally performed by a worker paid above the minimum wage.

31. Further, Defendant required Plaintiff and the Collective Members to perform non-tipped producing work prior to the opening of the club and after the club closed. Indeed, Defendant required the Plaintiff and the Collective Members to arrive prior to the club opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties. Likewise, Defendant required the Plaintiff and Collective Members to remain at the club after it had closed for business and there was no opportunity to earn tips, to perform manual labor cleaning duties and checkout procedures. At times, they spent over 30 minutes to two hours performing work before the club was open and the same amount of time after the club was closed performing non-tipped producing work.

32. However, Defendant did not pay its tipped employees the full minimum wage rate for this work. The duties that Defendant required Plaintiff and the Collective Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

33. When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

34. Indeed, Defendant did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

35. Defendant did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendant was capable of doing so. Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track the specific tasks for Plaintiff or the Collective Members.

36. However, Defendant did not allow its tipped employees to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

37. Moreover, Defendant violated the FLSA by not even paying the minimum "tipped" hourly rate. Defendant required its tipped employees to pay for items for their uniform, including shirts, pants, and shoes. These clothing items were required to perform work for Defendant and were primarily for the benefit and convenience of Defendant. Defendants also required tipped employees to incur parking fees, training costs and licensing fees. The costs for these items were not reimbursed by Defendants.

38. Because Defendant paid its tipped employees at the minimum of $2.13 per hour any week in which a tipped employee was required to pay for work related expenses for Defendant's business, their compensation fell below the minimum wage rate, thereby negating Defendant's entitlement to claim the tip credit.

39. In other words, by requiring Plaintiff and the Class Members to pay for these work-related expenses, their hourly rates of pay were further reduced by the amount of these uniform costs, training and licensing fees. As a result, they were not even paid the minimum hourly rate necessary for Defendant to claim the tip credit.

40. Because Defendant violated the requirements to claim the tip credit, Defendant lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Collective Members.

41. As such, Plaintiff and the FLSA Collective Members were not compensated at the federally mandated minimum wage.

42. Defendant knew or should have known that its policies and practices violate the law, and Defendant has not made a good faith effort to comply with the FLSA. Rather, Defendant acted knowingly, willfully, and/or with reckless disregard of the law carried and continues to carry out an illegal pattern and practice regarding its tipped employees. Defendant's method of paying Plaintiff and the Collective Members was not based on a good faith and reasonable belief that its conduct complied with the law.

### REVISED FIELD OPERATIONS HANDBOOK AND NEW DUAL JOBS REGULATION

43. On November 8, 2018, the Department of Labor issued opinion letter FLSA 2018-27 which provided a standard for interpreting the dual jobs regulation that was different from the "80/20" rule that had existed at the time. However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); Flores v. HMS Host Corp., No. 8:18-cv03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019) 50. Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (See https://www.federalregister.gov/documents/2019/10/08/2019-20868/tipregulations-under-the-fair-labor-standards-act-flsa).  After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021.

(https://www.federalregister.gov/documents/2020/12/30/2020-28555/tipregulations-under-the-fair-labor-standards-act-flsa).

44. After delaying the effective date of the Final Rule (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced, "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit." (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

45. Under the proposed rule, if an employee performs non-tip work that exceeds 30 continuous minutes, that worker is no longer performing work that is part of the tipped occupation. (Id).

46. Here, Defendant illegally required Plaintiff and the Collective Members to perform non-tip producing work for an excessive period of time. That is because Defendant required Plaintiff and the Collective Members to perform non-tipped work 31 minutes to two hours before the club was open for business, throughout their shifts, or after they were closed, when the club did not have customers and there was no opportunity to earn tips. During this time, Defendant paid below the minimum wage rate and forced the Plaintiff and Collective Members to perform non-tip producing duties, as noted above.

47. Given that Defendant failed to comply with the requirements to take the tip credit, Defendant has lost the ability to claim the tip credit and owe Plaintiff and the Collective Members pay at the full minimum wage rate per hour for all hours they worked for Defendant.

## COLLECTIVE ACTION ALLEGATIONS

48. Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendant as a tipped worker for at least one week during the three-year period prior to the commencement of this action to the present.

49. Plaintiff has actual knowledge, through conversations with her coworkers, that a collective of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

50. The FLSA Collective Members are similarly situated to Plaintiff in that they share the same duties and are subject to the same violations of the FLSA.

51. Like Plaintiff, the FLSA Collective Members were not given proper notice of the tip credit provisions, and performed substantial work that was unrelated to their tip producing duties.

52. Further, the FLSA Collective Members were, like Plaintiff, not properly informed of Defendant's intent to utilize the tip credit.

53. Moreover, the FLSA Class Members were also subject to deductions and expenses that dropped their compensation below the minimum wage.

54. Plaintiff and the FLSA Collective Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

55. The names and address of the FLSA Collective Members of the are available from Defendant's records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

56. Although the exact amount of damages may vary among the FLSA Collective Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

57. As such, the class of similarly situated Collective Members is properly defined as follows:

> **All current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this action to the present.**

## CAUSE OF ACTION

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS
### FAILURE TO PAY THE MINIMUM WAGE

58. Plaintiff incorporates the preceding paragraphs by reference.

59. This count arises from Defendant's violation of the FLSA in connection with its failure to pay the minimum wages. See 29 U.S.C. § 206.

60. Plaintiff and the Collective Members were paid hourly rates less than the minimum wage while working for Defendant.

61. Plaintiff and the Collective Members were not exempt from the minimum wage requirements of the FLSA.

62. Defendant's failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the Collective Members being paid less than the Federal minimum wage rate.

63. Defendant's failure to pay the minimum wage to Plaintiff and the Class Members, in violation of the FLSA was willful and not based on a good faith belief that its conduct did not violate the FLSA. 29 U.S.C. § 255(a).

## WAGE DAMAGES SOUGHT

64. Plaintiff and the Collective Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

65. Plaintiff and the Collective Members are entitled to liquidated damages.

66. Plaintiffs and the Collective Members are also entitled to recover their attorney's fees and costs, as required by the FLSA.

## JURY DEMAND

67. Pursuant to his rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

68. For these reasons, Plaintiff respectfully requests that judgment be entered in his favor awarding his and the Collective Members:

a. Minimum wage compensation unadulterated by the tip credit;

b. Liquidated damages;

c. Reimbursement for all expenses and wages wrongfully withheld;

d. An order conditionally certifying this matter as a collective action;

e. An order requiring Defendant to correct its pay practices going forward;

f. Reasonable attorney's fees, costs, and expenses of this action;

g. Pre-judgment interest (to the extent liquidated damages are not awarded) and post judgment interest; and

h. Such other and further relief to which Plaintiff and the Collective Members may be entitled, both in law and in equity.

Respectfully submitted,

/s/ Arnold J. Lizana
Law Offices of Arnold J. Lizana III
GA Bar No.: 698758
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
T: (470) 207-1559
F: (470) 231.0672
alizana@attorneylizana.com

Taft L. Foley II
The Foley Law Firm
(*APPLYING TO BE ADMITTED PRO HAC VICE*)
3003 South Loop West, Suite 108
Houston, Texas, 77002
T: (832) 778-8182
F: (832) 778-8353
taft.foley@thefoleylawfirm.com

**Attorneys for Plaintiff and Collective Members**